```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA

MALONEY GAMING MANAGEMENT,              CIVIL ACTION
LLC


VERSUS                                  NO: 10-01582


PARISH OF ST. TAMMANY                   SECTION: J (2)
```

### ORDER AND REASONS

#### NATURE OF MOTION AND RELIEF SOUGHT

Before the Court is Defendant Parish of St. Tammany's **Motion to Dismiss (Rec. Doc. 10)** as well as Plaintiff Maloney Gaming Management, LLC's **Memorandum in Opposition to Motion to Dismiss (Rec. Doc. 17)** and Defendant's **Reply Memorandum in Support of Motion to Dismiss (Rec. Doc. 21).**

#### PROCEDURAL HISTORY AND BACKGROUND FACTS

Plaintiff Maloney Gaming Management, LLC ("MGM") filed this matter in this district on May 27, 2010 under 42 U.S.C. § 1983, alleging that Plaintiff was deprived of property without due process of law and without just compensation in violation of the Fourteenth and Fifth Amendments of the United States Constitution and as such is entitled to damages and attorneys' fees.  In response, Defendant filed this Motion to Dismiss under F.R.C.P. 12(b)(6) on June 19, 2010.  Subsequently, Plaintiff filed a Memorandum in Opposition to Motion to Dismiss ("Opposition") on August 10, 2010, and Defendant filed a Reply Memorandum in

Support of Motion to Dismiss ("Reply") on August 20, 2010.

In its Complaint, Plaintiff alleges that, in spite of obtaining licensing and permits and in spite of significant expenditures made by Plaintiff for the purpose of remodeling its facilities located in Covington and Lacombe, the St. Tammany Parish Council on or around June 4, 2009, passed Ordinance 12-025.10 ("Ordinance"), which prohibits the use of electronic video bingo in the unincorporated areas of St. Tammany Parish ("Parish") by any person or entity, and which, in effect, Plaintiff argues, prohibits Plaintiff from operating its facilities in violation of Plaintiff's rights.  Plaintiff implies that it views the licenses and permits obtained for the Covington and Lacombe facilities as property within the meaning of the Fourteenth and Fifth Amendments.

Additionally, Plaintiff claims that it relied to its detriment on the licenses and permits that it received as well as on the then-existing laws and a November 16, 2009 legal opinion letter issued by the St. Tammany Council attorney which advised that video bingo was permitted within the Parish.  Finally, Plaintiff claims that the Parish invoked a policy of prohibiting video bingo in May 2009 before passing the Ordinance and that Plaintiff was denied due process by the Parish's failure to provide notice and opportunity to be heard prior to taking any action affecting Plaintiff's "established property interests."

In support of its claims, Plaintiff alleges the following facts:

- That in March and February of 2009, it properly obtained licenses as a commercial lessor "to lease premises to charitable organizations" for its locations in Covington and Lacombe.  In the Complaint, the Plaintiff does not specify that these licenses were obtained from the Office of Charitable Gaming pursuant to LSA-R.S. 4:701-740, although Plaintiff does specify this fact in its Opposition.
- That Plaintiff obtained occupational licenses for both locations from the Department of Planning of St. Tammany Parish on March 27, 2009 as well as Certifications of Completion from the St. Tammany Parish Department of Permits and Regulatory on March 27, 2009 (Covington) and February 6, 2009 (Lacombe).
- That prior to the passage of the Ordinance, the use of electronic video bingo in the unincorporated areas of the Parish was permitted by law.

Plaintiff claims damages in the amount of $1,000,000.00 for past, present and future loss of income, lost profits and earnings, and attorneys' fees and costs.

## ARGUMENTS OF THE PARTIES

Defendant argues that, under Louisiana law and under the United States Constitution, a gaming license does not amount to a right, property or a protected interest, and, as such,

3

Plaintiff's gaming license was not protected by the constitutions of Louisiana and the United States.  Furthermore, Defendant argues that Louisiana law explicitly permits each parish to decide whether it will permit or restrict charitable gaming within the parish, and, therefore, Defendant was entitled to pass the Ordinance prohibiting electronic bingo within the unincorporated areas of the Parish.  Additionally, Defendant argues that Plaintiff was never licensed to conduct electronic video bingo because, under Louisiana law, commercial lessors, which Plaintiff in the complaint admits to being licensed as, are prohibited from operating or conducting games of chance and also because Plaintiff's occupational license identified Plaintiff's facilities as "assembly hall[s]" rather than as bingo parlors.

Relying heavily on Montecino v. Louisiana, 55 F. Supp. 2d 547 (E.D. La. 1999), Defendant argues that in consideration of whether there has been an unconstitutional taking under the Fifth Amendment, state law determines what constitutes a property interest for which compensation must be made.  Here, Defendant argues, Louisiana law holds that a gaming license is not a property right, and consequently, Plaintiff has no constitutionally protected interest in any alleged gaming licenses held by Plaintiff.  Furthermore, Defendant emphasizes that Plaintiff held no licenses to conduct electronic bingo at its facilities at the time of the passage of the Ordinance and

4

therefore, even if gaming licenses were recognized as property under Louisiana law, there was no taking in this case.

Defendant also argues that Plaintiff cannot establish a claim for regulatory taking because Plaintiff has not been deprived of all economically viable use of its property.  Citing Sakla v. City of New Orleans, 216 F.3d 1079, 2000 WL 729125 (5th Cir. 2000), Defendant explains that a regulation does not amount to an unconstitutional taking if it "'substantially advances legitimate state interests and does not deny an owner economically viable use of the land."  Defendant argues that the regulation of gaming advances a legitimate state interest, evidenced by language in the Louisiana Constitution itself, and that Plaintiff may still make economically viable use of its property because it still may still lease its premises for other types of charitable gaming not prohibited by state statute or Parish ordinance, such as live bingo.

Finally, Defendant argues that Plaintiff's due process claim fails as a matter of law because Plaintiff has no constitutionally protected property interest affected by the Ordinance.  First, Defendant argues that Plaintiff had no protected property interest because under Louisiana law, gaming is a privilege and not a right.  Secondly, Defendant argues that Plaintiff had no protected property interest because Plaintiff never held a license to conduct electronic bingo  because

5

Louisiana specifically prohibits Plaintiff from so doing.

In Plaintiff's Opposition, Plaintiff first argues that Defendant's Motion should be converted to a Motion for Summary Judgment under F.R.C.P. 56 because Defendant's Motion makes reference to "matters outside the pleading." Consequently, Plaintiff argues that, in order to adequately respond to Defendant's motion, Plaintiff must rely on additional evidence already in its possession and itemized in an attached List of Evidence and requests that, should this evidence be insufficient to demonstrate the adequacy of Plaintiff's complaint, Plaintiff be given a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

Plaintiff relies on the following facts to assert additional allegations not contained in the Complaint:

- That on the planned opening day of its facilities, April 15, 2009, all of its video bingo machines had been tested and permitted as required by the Louisiana statutory scheme related to charitable gaming and that Plaintiff's license as a commercial lessor had been obtained and properly posted and that, in spite of these facts, the Parish denied Plaintiff permission to open its facilities on April 15, 2009, well in advance of the passage of the Ordinance.
- That Defendant issued all licenses and permits to Plaintiff with full knowledge of Plaintiff's intent to operate a video

bingo parlor at its two facilities. Plaintiff argues that the Parish relied on documents which clearly identified the facilities as bingo parlors in issuing building permits and Certificates of Completion (K08-1519 and K08-1520, referred to in the Complaint).

- That Defendant acted arbitrarily and capriciously in passing the Ordinance. In support of this proposition, Plaintiff cites an article from NOLA.com which credits complaints and protests from Parish residents as the motivating factor behind enacting the Ordinance.
- That Plaintiff relied on an Opinion Letter issued to Plaintiffs on November 16, 2007 by Neil C. Hall, III, the "Council Attorney" for the Parish, which advised Plaintiff that video bingo machines may be used in the unincorporated areas of the Parish so long as Plaintiff complies with applicable state laws.

In addressing Defendant's arguments made in the Motion, Plaintiff makes five arguments. First, Plaintiff argues that United States Supreme Court precedent makes it at least doubtful that a gaming license in the hands of the Plaintiff does not equal constitutionally protected property. Secondly, Plaintiff argues that it relied to its detriment on the previously existing ordinance, its licenses, the November 16th Opinion Letter, and

the statutory scheme in La. R.S. 4:701-740[1].  Thirdly, the Plaintiff argues that, while it might be true that R.S. 4:706(B) permits each parish governing authority to determine which types of charitable gaming shall be allowed within the parish, the Defendant in this case prevented Plaintiff from opening its facilities well in advance of issuing the Ordinance in violation of Plaintiff's rights.  Plaintiff relies on Wheeler v. City of Pleasant Grove, 664 F.2d 99, 100 (5th Cir. 1981), for the proposition that where a permit has been granted by the City and where the City subsequently issues an ordinance forbidding the activity for which the permit had been issued under pressure of public disapproval of the issued permit, that such an activity was confiscatory.

Fourthly, Plaintiff addresses Defendant's argument that Plaintiff could still make viable use of its property by arguing that "the conclusion that there was no economic deprivation is simply wrong" because Plaintiff had entered into lease agreements with certain charities for use of its two facilities which provide that all rental income owed to Plaintiff depends entirely on the charities' proceeds from video bingo.  Finally, Plaintiff argues that, while it is statutorily prohibited from operating a video bingo parlor itself, Plaintiff has been licensed as a

---

[1] Because neither party adequately briefed this issue, it is not addressed here.

commercial lessor and that "it is pretty obvious" that Plaintiff's purpose in becoming licensed as a commercial lessor was to enter into leases with qualified charities under the statutory scheme so as to generate rental income from the charities use of the two facilities.

Plaintiff argues in conclusion that neither a Motion to Dismiss nor a Motion for Summary Judgment are appropriate because its Opposition points to many facts and allegations that could result in recovery.

In its Reply, Defendant addresses Plaintiff's argument that Defendant's motion should properly be treated as a Motion for Summary Judgment because it references matters "outside the pleadings." Defendant cites several Fifth Circuit cases for the proposition that the Court may consider documents attached to a motion without converting the motion into one for Summary Judgment when the complaint refers to documents and those documents are central to the plaintiff's claims. Therefore, Defendant argues that Plaintiff's request to convert the Motion and to engage in discovery should be rejected and the Motion to Dismiss should be granted.

Additionally, Defendant argues that Plaintiff cannot show that at any time it held licenses to operate video bingo at its facilities and that Plaintiff's new allegations and arguments in its Opposition were formulated for purposes of distraction.

9

Defendant argues that only the charities with which the Plaintiff entered into leases may have held licenses for charitable gaming and that Plaintiff does not have standing to challenge the Ordinance on behalf of those charities.  Furthermore, Defendant argues that Plaintiff's choices in negotiating a lease agreement with its charity-lessees do not provide Plaintiff with a cause of action against the Defendant.  In summary, Defendant argues that Plaintiff cannot refute that Plaintiff does not and cannot hold a license to conduct video bingo and that Plaintiff has not been deprived of all economically viable use of its property as a result of Defendant's actions.

## DISCUSSION

As set forth by the Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955 (2007), the standard to be applied when deciding a Rule 12(b)(6) motion is not whether it is conceivable that some set of facts could be developed to support the allegations in the complaint, but rather whether the plaintiffs have stated enough facts in the complaint to allow a court to conclude that it is "plausible" that the plaintiffs are entitled to relief.  The Court must accept as true all well-plead allegations and resolve all doubts in favor of the plaintiff. <u>Tanglewood East Homeowners v. Charles-Thomas, Inc.</u>, 849 F.2d 1568, 1572 (5th Cir. 1988).  In ruling on a motion to dismiss for failure to state a claim, the court will not look beyond the face

of the pleadings to determine whether relief should be granted based on the alleged facts. Spivey v. Robertson, 197 F.3d 772, 774 (5th Cir. 1999). "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." In such cases, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

Plaintiff, in its Opposition, alleges that Defendant's reference to "matters outside the pleading" converts Defendant's Motion to a Motion for Summary Judgment and requests additional time for discovery. The Fifth Circuit Court of Appeals has addressed what may properly be considered in ruling on a 12(b)(6) motion in In Re Katrina Canal Breaches, 495 F.3d 191 (5th Cir. 2007). In that case, the Fifth Circuit found that insurance contracts could be considered in ruling on a motion to dismiss because they were attached to the motion, were referenced to in the complaints, and were central to the plaintiffs' claims. Id. at 205.

That case is controlling here. Here, the alleged "matters outside the pleadings" to which Plaintiff refers include a copy of the Parish Ordinance 12. 025.10 (Motion, "Exhibit A"); documents, dated March 27, 2009, showing that the Parish Government Department of Planning had no objection to Plaintiff

11

receiving Occupational Licenses for Plaintiff's Covington and Lacombe facilities with handwritten annotation "assembly hall" written below Plaintiff's name (Motion, "Exhibit B"); and two Class "O" Occupational Business Licenses issued for the two facilities by the Parish Sheriff's Office Occupational License Department (Motion, "Exhibit B").

It appears that, as required by <u>In Re Katrina Canal Breaches</u>, all of these documents were attached to Defendant's Motion, referred to in Plaintiff's Complaint, and central to Plaintiff's claims. Paragraph seven of the Complaint refers to occupational licenses issued on March 27, 2009 by the Department of Planning of the Parish for Plaintiff's Lacombe and Covington facilities, which appears to be the same document attached to Defendant's Motion as part of Exhibit B. Moreover, paragraph ten of the Complaint clearly refers to Ordinance 12.025.10, which Defendant attached to its Motion as Exhibit A. Additionally, both the Ordinance and the issuance of the licenses are central to Plaintiff's claims because the Ordinance is the action giving rise to Plaintiff's suit and the licenses form the basis of Plaintiff's detrimental reliance and due process violations claims. Clearly, then, these "matters" referred to in the Motion do not convert the Motion to a Motion for Summary Judgment under the rule in <u>In Re Katrina Canal Breaches</u>.

Turning then to the question of whether Defendant's Motion

to Dismiss should be granted, it is necessary to ask, under the facts as presented by Plaintiff, whether Plaintiff has stated any plausible grounds for relief in its Complaint.  Plaintiff alleges that it is entitled to relief because the passage of the Ordinance amounted to an unconstitutional taking of its property without just compensation.  The Fifth Amendment of the Constitution, made applicable to the states by the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation.  A preliminary question in addressing Plaintiff's claim is whether the Plaintiff held any property protected by the Fifth Amendment.  The United States Supreme Court has not developed a "set formula for determining when justice and fairness require that economic injuries caused by public action be compensated by the government under the Takings Clause." Montecino v. Louisiana, 55 F. Supp. 2d 547, 551-52, *citing* Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 495 (1987).

Factors to consider when determining whether a regulation is a taking for purposes of the Fifth Amendment are (1) the economic impact of the regulation complained of; (2) the extent to which the regulation interferes with distinct investment-backed expectations; and (3) the character of the government action. Id. *citing* Kaiser Aetna v. U.S., 444 U.S. 164, 175 (1979).  "It is settled, however, that the framework of state law governs

'what is a property interest compensable under the Fifth Amendment.'" Montecino, 55 F. Supp. 2d at 552.

Here, the licenses and permits held by Plaintiff permit the Plaintiff to "lease premises to charitable organizations" and to make "commercial, industrial, and institutional business" use of the properties; they do not give Plaintiff the right to operate video bingo at any of its facilities.  Louisiana law governing charitable gaming is found in La R.S. 4:701 et seq.  It provides that "a commercial lessor's license shall authorize a person to lease specific premises to licensees for the conducting of charitable gaming activities."  La. R.S. 4:719.  Additionally, the statutory scheme provides that "the governing authority of each parish shall decide whether charitable raffles, bingo, and keno. . . shall be permitted within the parish." La. R.S. 4:706.

Furthermore, the law provides that "any license, permit, approval, or thing obtained or issued pursuant to the provisions of this Chapter is expressly declared by the legislature to be a pure and absolute revocable privilege and not a right, property or otherwise, under the constitution of the United States or of the state of Louisiana.  The legislature declares that no holder of any license or permit acquires any vested interest or right therein or thereunder."  La. R.S. 4:718(F).  Under this statutory scheme, then, it seems evident that Plaintiff, as a licensed "commercial lessor" was not in possession of any property for

14

Taking Clause purposes.

The holding in <u>Montecino</u> supports this view. In <u>Montecino</u>, this Court held that the holders of video poker licenses were not deprived of property when Louisiana sought to implement the results of an election in which thirty-three parishes voted to terminate video poker in those parishes. 55 F. Supp. 2d at 549-50. This Court reasoned that "the [licensees] have no state-recognized property interest in video poker that is protected by the Taking Clause." <u>Id.</u> Similarly, assuming the Plaintiffs here were licensed to conduct video bingo, the Plaintiffs would have no property interest in video bingo that is protected by the Takings Clause. Furthermore, Plaintiff's reliance on <u>Wheeler</u> is unavailing because <u>Wheeler</u> predicates its holding upon the fact that the plaintiffs in that case had a protected property interest. 664 F.2d at 100.

Furthermore, the local licenses and permits received from the Parish do not permit Plaintiff to engage in charitable bingo or video bingo. Those licenses are general occupational licenses permitting "commercial, industrial and institutional business" for the establishments for which they are granted. The right to make commercial use of the property was not altered by the enactment of the Ordinance; the Ordinance merely regulates a type of use of the properties.

As regards Plaintiff's due process claim, the first step is

to ascertain whether the Plaintiff held a protected interest in "property" or "liberty." American Mfrs Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 57 (1999). Concerning "property interests" for due process purposes, the Supreme Court has said "[p]roperty interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). "For one to have a protected property interest within the contours of the Fourteenth Amendment, one must have some legitimate claim of entitlement to it, and 'the sufficiency of the claim of entitlement must be decided by reference to state law.'" Montecino, 55 F.Supp.2d at 553, *citing,* Blackburn v. Marshall, 42 F.3d 925, 936 (5th Cir. 1995).

While Plaintiffs urge that Cleveland v. U.S. stands for the proposition that an issued license becomes a property interest in the hands of the licensee, in fact, that case merely addresses whether a license is property in the hands of the State for purposes of 18 U.S.C. § 1341, relating to mail fraud, and mentions as dicta that "licensees *may* have property interest in their licenses. . . " 531 U.S. 12, 25 (2000) (emphasis added). Here, as Defendants have pointed out, Plaintiffs did not have a property right under state law as shown in La R.S. 4:718(F) and

as found in <u>Montecino</u>.  Therefore, Plaintiff's due process claim is stalled at the gate, having failed to assert a protected property interest.

Accordingly, **IT IS ORDERED** that the Defendant's Motion to Dismiss is **GRANTED.**

New Orleans, Louisiana, this 9th day of September, 2010.

_____
CARL J. BARBIER
UNITED STATES DISTRICT COURT